WALLING v. UNITED STATES et al.
THE AMERICAN MANUFACTURER.
No. 59 of 1947.

District Court, E. D. Pennsylvania.

June 24, 1948.

As Amended Aug. 3, 1948.

Howard T. Long and Howard M. Long, both of Philadelphia, Pa., for libellant, Ritner K. Walling.

Leo J. Curren, Dept. of Justice, Admiralty Div., of New York City, for United States.

Rawle & Henderson and Thomas F. Mount, all of Philadelphia, Pa., for impleaded respondent.

BARD, District Judge.

This is a libel filed by the owner of a barge which came into collision with a merchant vessel in the Delaware River while the barge was being towed upstream by a tug.

On the basis of the pleadings and the testimony, I make the following special

Findings of Fact.

1. The libellant is Ritner K. Walling, owner and operator of the barge Electric No. 25.

2. The Electric No. 25 is a coal barge without motive power or steering power, approximately 170 feet in length, with a carrying capacity of approximately 2,700 tons of coal.

3. The respondent, the United States of America, United States Maritime Commission, was at all material times the owner of the merchant vessel American Manufacturer, which is a steel, single screw Diesel electric vessel of 6,778 gross tons.

4. The impleaded respondent, Curtis Bay Towing Company of Pennsylvania, was at all material times the owner and operator of the tug H. C. Jefferson, which is a steam towing vessel developing 900 horse power.

5. At about 5:15 p. m. on November 30, 1946, the Electric No. 25, made fast to the starboard side of the H. C. Jefferson, was taken in tow from the Philadelphia Electric Company Wharf at Chester, Pennsylvania, bound on a voyage to Beach and Palmer Streets, Philadelphia, laden with 2,500 tons of coal.

6. At all material times during the voyage the Electric No. 25 was displaying proper lights, and was wholly dependent, both for motive power and navigation, upon the H. C. Jefferson.

7. During the course of the voyage the H. C. Jefferson was exhibiting proper running lights and also towing lights, indicating that she was towing a barge alongside.

8. At approximately 7:30 p. m. on November 30, 1946, the American Manufacturer left Pier 46 South Wharves, Philadelphia, Pennsylvania, and proceeded down the Delaware River, bound for Houston, Texas.

9. At 7:51 p. m. the master of the American Manufacturer observed an American Dredging Company tug and tow pulling out into the stream ahead of him from Pier 92 South. The American Manufacturer blew a two-blast signal at this tug. This signal was not answered. The American Manufacturer then blew a second two-

blast signal, which was likewise unanswered.

10. At 7:54 p. m. the American Manufacturer's engines were ordered half speed ahead. The master of the American Manufacturer then noticed, for the first time, the H. C. Jefferson coming up the river. The H. C. Jefferson and her tow were at that time approximately a mile away.

11. The master of the American Manufacturer heard the H. C. Jefferson blow a one-blast signal, but he did not answer this signal, thinking that it was intended for the American Dredging Company tug and tow which was ahead of him in the river.

12. When the distance between the H. C. Jefferson and the American Manufacturer had been reduced to approximately three-quarters of a mile, the master of the American Manufacturer ordered his engines full astern and blew a three-blast signal. Reversal of the American Manufacturer's engines was ordered because the master realized that his vessel was getting too close to the American Dredging Company tug and tow, and because the channel at that point was partially obstructed on the American Manufacturer's left-hand side by the presence of several moored vessels in the stream.

13. The American Manufacturer's engines did not go full astern due to the failure of both generators, which left the American Manufacturer without steering or motive power, and without illumination.

14. The American Manufacturer continued to drift down the river with the tide, and when she had reached a position approximately off Pier 84, she blew several short blasts and ordered her anchor dropped.

15. The anchor was not dropped because the boatswain who attempted the operation released the brake on the starboard anchor chain without first having removed the pawl therefrom, which caused the anchor chain to jam on the pawl, and prevented the anchor from dropping. No attempt was made to drop the port anchor.

16. When the distance between the H. C. Jefferson and the American Manunfacturer had diminished to approximately one quarter of a mile, the master of the American Manufacturer observed the H. C. Jefferson swinging toward the Pennsylvania shore. The American Manufacturer then blew a one-whistle signal to indicate that she was going to her own right-hand side.

17. At a point about 400 feet north of Pier 103, the American Manufacturer's lights went on again, supplied with current by an emergency generator which had initially failed because of a defect in the switchboard, but which was subsequently put into operation by hand.

18. At a point opposite Pier 103, the American Manufacturer collided with the H. C. Jefferson's tow, the Electric No. 25, at approximately 8 p. m.

19. The master of the H. C. Jefferson had first observed what eventually proved to be the American Manufacturer as the H. C. Jefferson, coming up the river, passed the American Dredging Company tug and tow, which was preceding the American Manufacturer down river. At that time the H. C. Jefferson and the American Manufacturer were approximately one-half mile apart.

20. The master of the H. C. Jefferson was unable to discern the course or identity of the unilluminated vessel, and recognized it only as some dark object ahead of him in the river.

21. The H. C. Jefferson, proceeding at half speed ahead on her own right-hand side of the channel, blew three separate one-blast signals at this object coming down the river, at 20 second intervals.

22. When the American Manufacturer's lights came on again, the master of the H. C. Jefferson blew three short blasts and ordered the H. C. Jefferson full astern. The running of the engines full astern caused the bow of the H. C. Jefferson and her tow to swing toward the Pennsylvania shore.

23. Shortly before the collision, the H. C. Jefferson's searchlight was played on the bow of the Electric No. 25, and on the stern of one of the vessels which was anchored nearby.

24. The collision caused holes to be opened in the hull of the Electric No. 25,

and she was subsequently towed to the river bank and beached to prevent her sinking.

25. At all material times the night was clear and visibility was good. At the time of the collision there was an ebb tide running at about two miles per hour.

26. The Electric No. 25 was not at fault in any way in this collision.

27. The American Manufacturer was at fault in this collision in that

(a) She was unseaworthy by reason of the imperfect condition of her generators, one of which failed because a spring, which was an integral part thereof, was not suitable for the purpose for which it was intended. The reason for the failure of the other generator has not been established by the evidence.

(b) She did not drop her anchor immediately after the failure of her generators.

(c) She had gotten herself, immediately prior to the collision, into a dangerous position by having anticipated overtaking the American Dredging Company tug and tow, and then having to check her forward motion when the American Dredging Company flotilla did not respond to the passing signals. This navigation of the American Manufacturer, which was carried out in a narrow channel which was partially obstructed by moored vessels, involved a substantial risk of danger to the vessels in the vicinity.

28. The H. C. Jefferson was also at fault in this collision in that

(a) Her master continued to proceed up the Delaware River with knowledge that some object, the character and course of which he was unaware, was ahead of him in the river.

(b) Her master persisted in blowing a passing signal at this object, and did not take any steps to avert a collision until it was too late to be avoided.

### Conclusions of Law.

1. This court has jurisdiction of the subject matter and the parties to this action.

2. The libel of Ritner K. Walling is sustained with interest and costs as against both the United States of America, owner of the American Manufacturer, and the Curtis Bay Towing Company of Pennsylvania, owner of the H. C. Jefferson.